Case numbers 25-5038 Burt v. Playtika Ltd, 25-5039 Duckworth v. Yellow Social Interactive, 25-5040 Ewing v. VGW Holdings Ltd, and 25-5042 Bean v. Aristocrat Leisure Ltd. Oral argument not to exceed 20 minutes to be shared by appellants. 20 minutes for appellees. Robert Loeb for the appellant. You may proceed. Thank you and thanks everyone in Memphis, Judge Lipman and everyone else for the wonderful hospitality. This has been a real treat. I hope the lawyers have enjoyed Memphis and gotten some barbecue and we can begin. Thank you. May it be so. My name is Robert Loeb for appellants Playtika and VGW. The plaintiffs in this action are trying to invoke a 165-year-old state gambling loss statute and to use that statute on its own to bring a collective statewide action to recover asserted losses on behalf of thousands or tens of thousands of Tennessee citizens who may have played plaintiff's defendant's online games, but all agree or don't at least oppose that if the statute they invoke, 29-19-105, does not by itself authorize such a statewide collective action, then this case is inherently requires use of Tennessee Rule 23 and it needs to be treated as a class action for the purposes of CAFA. And it should be treated as a class action here because the statute that they're citing here simply does not support a collective statewide action. The text, if you look at it, speaks to an individual action seeking to recover one plaintiff seeking to recover the gambling losses of a specific gambler. If you look at the interrelated provisions, sections 104, 105 and 106, it's very clear. So section 104 speaks to any person who has paid or delivered anything of value and lost it in a game or a wager, allows that person 90 days to sue to recover that specific property they lost or the specific money they lost from the person who won it. And for example, if they played a poker game and they bet a watch, that would be part of the property that they could then recover. It's specific person, specific property, specific gambler. And if that person doesn't bring the claim within 90 days and that goes under section 105, there could be an action to recover that amount, that same property, that same watch that was lost at the poker game could not be recovered for the use of the spouse, the child, or if there's no child, the next of kin. Again, individual action to recover a specific amount of money or specific property in an individual case. And if that person doesn't sue within 12 months, then under section 106, then a creditor of the gambler can sue to recover that watch or that money that was lost in that game. So, counsel, in Nestle, as I understand it, we looked at 1332 D.1 and specifically B, which defines class action as rule 23 or similar state statute or rule of judicial procedure. And these, in other words, the plaintiff's argument here, which makes some sense, is okay, so what you did in Nestle is engaged in textual interpretation. You compared and looked at these laws. Nothing in 104, 105, 106 looks, talks, or in any other way appears like rule 23. So why would we treat it as such? The argument here is not that these rules provide for anything under rule 23. The argument is that it doesn't provide for a collective action whatsoever and that under the Williams Eighth Circuit case. But why couldn't you argue, I don't understand why you couldn't argue that in state court. In other words, you could say to the state court, look, you can't bring a collective action under this. Well, under CAFA, you look not at the labels they gave. Certainly, they're labeling their complaint, this is not a class action, even though it's a collective action on behalf of thousands of people across the state. But under CAFA, what this court has said is you're not allowed to manipulate this with the labels that you give. And the Eighth Circuit in the Williams case says where you're trying to basically obscure the fact you're bringing a class action by saying I'm not, I'm just suing under this individual statute that doesn't provide for collective recovery. But the only device under Tennessee law that allows them to have collective recovery is Tennessee rule 23, which everyone would agree would meet the standards of CAFA. And so what Tennessee court just said less than two weeks ago in looking at section 105 for the first time said is this statute does not provide for a collective action, doesn't allow, in the words of the court at page six, a single plaintiff to initiate suit for every citizen in Tennessee under 105. And what the court said at page four was, in effect, when you're doing that, in effect, it is a class action. And that is what's going on. This is, in effect, a class action without the label of a class action. And under Williams. But I thought Braden dismissed the case. Well, it wasn't, that was not a CAFA case. It was just addressing what this statute means, then it was addressing the issue of standing, right? Sure. And it said no Tennessee constitutional standing, right? Correct, Your Honor. And so I don't understand, again, it goes back to my question, why couldn't you just have argued the same thing, whoever argued in Braden in state court? Like, why are we trying to manipulate the action of the plaintiff to try and fit it into CAFA when they're clearly not bringing a class action? They are bringing what appears to be a, I agree with you, a weird collective action. But, Your Honor, we're not the one manipulating. What this court said in Freeman is that CAFA is intended to avoid artificial structuring by the plaintiff to avoid federal jurisdiction. And that's what they're doing. They're bringing what the Tennessee court says, in effect, a class action, but they're not using the label of a class action. Under CAFA, courts look at the substance of the complaint, the substance of the claims, and are not driven by the label. Isn't that a classic mark of a class action under Rule 23, typicality? And these plaintiffs don't claim that they lost a penny. They're not claiming they lost any money gaming. And they don't claim any relative of theirs lost any money gaming. So how can they be a typical representative in a class action? Well, they may be poor class representatives, but there's no doubt they are bringing... They're very poor representatives, aren't they? And some of the facts regarding some of these plaintiffs slash representatives, it needs to be further fleshed out on remand. But you're right. There's certainly going to be, if this is a class action, they will either get new class representatives or the cases will have to be Rule 23 standards. But they are bringing a collective statewide action. They're just trying to obscure and avoid federal jurisdiction under CAFA by saying, well, what we're trying to bring is not a collective action. They said, we're trying to bring an action where it's all been just delegated to us to sue on behalf of thousands of individuals. But in 1858, when this statute was enacted, these type of statewide class wide relief by a single plaintiff were unknown. The state legislature in Tennessee in 1858, it's preposterous for them to... I mean, there are... They argue that the only reason they're allowed to stay in state courts because this statute on its own provides for this collective relief. This statute does not provide for this collective relief. The Tennessee courts have told us that now. And also, the plaintiffs can't have it both ways. If this is considered to be a massive assignment of all of these thousands of claims to them, then under Sixth Circuit law, then you would aggregate all the claims and there'd be diversity jurisdiction, right? Under central paper versus Southwick, this court's at 56 FedSec 593. In an assignment situation, you would aggregate all the claims and there would be diversity. So either there is CAFA jurisdiction, because this is, as the Tennessee court said, in effect, a class action, or there's diversity jurisdiction, because this is really not an assignment statute, but if you treat it that way, then there would be diversity jurisdiction. But isn't it clear that the law is we can't aggregate individual claims? What this court said in central paper is if there is an assignment of many claims, and that's what they claim this is going on here, that it's appropriate to aggregate those claims. I'll reserve the rest of my time for rebuttal, unless you have any further questions. Okay, thank you, counsel. Good morning. May it please the court, Sarah Harrington, on behalf of the Aristocrat and Product Madness plaintiffs, or defendants, excuse me, appellants. Plaintiff is sued in her own name, seeking to assert the damages claims of thousands of strangers while disclaiming any obligation to notify the rights holders or to establish that she adequately represents their interests. If Tennessee law allows her to assert the claims of thousands of strangers, which I think is a big if, it can only be for one of two reasons. Either she has to treat the case as a class action, in which case there's federal jurisdiction under CAFA, or the Tennessee law assigns the member's claims to her, in which case there's traditional diversity jurisdiction. Either way, the defendants have a right to have this case heard. Can I ask you about the assignment? If we treat it as an assignment statute, then do you concede she has standing under Sprint? Yes, if the state law assigns the claims to her, then she has standing. I think it's questionable whether it is in fact an assignment law, but also it's very clear that if this... Sorry, one more, and I'm sorry to interrupt you, but do you also concede that if it is not an assignment law, you can't aggregate the claims? Not necessarily, because there is this sort of practical inquiry that courts look at, and where you say, is it more likely than not that she will end up with more than $75,000? And even the district court thought that she would very likely lay claim to any unclaimed funds, undistributed funds to families, and it's extremely likely that if that happens, and she has had the opportunity in this court to disclaim any intention to do that, and she hasn't done that, if that happens, it's extremely likely that that will be more than $75,000. But certainly, if it's an assignment, it's well in excess of $75,000, the amount in controversy. It exceeds $5 million, and so there would certainly be traditional diversity jurisdiction if this is an assignment statute. Judge Lepar, I'd like to go back to the question you were asking about how the Tennessee statute doesn't reference any class action procedures. Of course, that's true of nearly all class actions. When you look at the substantive law that's underlying a plaintiff's claim, whether it's a product liability law or tort law, there's generally no reference to class action procedures. The class action procedures come because of the due process clause. They're sort of imposed on top of a suit where one plaintiff is asserting the rights of many strangers who are not parties to the suit, and they come from the themselves. How do you deal with the language of NESTLE? The same question I asked your co-counsel. Yeah, so NESTLE, it's important. NESTLE was dealing with a statute that was different in one extremely important way, which is that it authorized the Michigan Attorney General to bring No, I get the facts are different, and I saw that in your briefs, but the reality is the way we did the mode of analysis in NESTLE seems perfectly appropriate here, which is look and see if the law that they are bringing the action under is similar in kind to rule 23, and if it's not, then don't create something that isn't there. Well, but the first step in the analysis in the NESTLE decision was to say, well, look, this statute itself provides basically the mass or the class action mechanism. It authorizes the attorney general to bring suit on behalf of a mass of Michiganders, right? The general public. I forget what the phrase was, but there's nothing like that in section 29-19-105. It refers to a single gambler's family, right? So the statute itself does not provide the kind of aggregation mechanism that was provided by the statute in NESTLE, and I think it's important. Right, but doesn't that cut against you in some sense? Because the only way to then aggregate the claims under the Tennessee statute is to use something like rule 23, Tennessee rule 23 or federal rule 23. If you look at the provision in the Michigan Consumer Protection Act that's right after the provision of that issue in NESTLE, it's basically the same thing, but it allows private people. It's sort of like a private attorney general statute. It allows private people to come in and start similar claims, and we looked at every case we could find, excuse me, where courts, where someone had brought a claim under that provision asserting private rights of someone else, and every one of those courts treated through rule 23. They're treated as class actions. Tell me this, would race you kind of apply here? Let's say these plaintiffs lose. Does that mean that these family members therefore are barred from bringing their own suit? Yes, because they're in privity with the plaintiff. Are they? Yes, under Tennessee law, privity applies where the subject matter, where the party's relationship to the subject matter of the litigation is the same. Here, the subject matter of litigation is the same. Right, but there's no notice given to these family members. I mean, the plaintiffs just wholesale brought suit on their own accord, right? That's why you would need to have a class action mechanism, because as the Supreme Court has held, and the Tennessee Supreme Court, if you are pursuing the claim of someone else such that that person would be bound, you have to give them notice. You have to give them an opportunity. But you're trying to make up rules that don't exist in Tennessee. No, they do exist. There's Tennessee Rule 23, right? Tennessee Rule 1 says these rules apply to all civil actions. This is a civil action. So when someone is coming in and trying to assert claims that belong to other private people, in Nestle, again, the state was trying to assert claims that belong to itself, its sovereign interests. Here, you have someone coming in and trying to assert claims, damages claims that belong to other private individuals. The only way to do that when you're talking as either to join them, and when there's too many people, you have to do it as a class action. Otherwise, there are due process problems. So that's why fundamentally, we think we have to do this case, excuse me, as a class action. Does that happen here at all? She has not. And I mean, we're right at the beginning, right? Nothing's really happened in the case. But that's our basic proposition, that if this case is to go forward, and the claims have not been assigned to her by operation of Tennessee state law, it can only go forward as a class action. Now, there may be good reason why it couldn't go forward as a class action, because she wouldn't be the right representative. But this part has held that that's not a reason not to exercise CAFA jurisdiction. That's sort of the next step in the analysis. Well, but doesn't the law, isn't there a requirement that federal jurisdiction is determined at the time of removal to the federal court? So I mean, as far as, oh, somebody else could be substituted, well, but at the time of removal, she's the plaintiff. Right. But this court said in Metz v. Unizin Bank, which is cited in the briefs, that the question whether a case can be certified as a class action does not go to whether there's CAFA jurisdiction. You look at sort of the form the case takes. And here, this case presents as a class action. You have one person asserting the rights of thousands of private individuals who are strangers to her and not parties to the case. If that's going to go forward at all, it has to go forward as a class action. But it seems to me there's both the typicality to go back to Judge Gilman's question to your co-counsel and an adequacy problem. I agree. I don't think this is a case that can be certified as a class action, but that would be a merits ruling, and it should be made in the district court. Right. Just because it will be a failed class action doesn't mean it doesn't present as a class action for CAFA purposes. I mean, I don't know. Obviously, this isn't the law of the circuit, but Judge Nalbandian in his concurrence said you can peek through to figure it out. Right. And so this, I mean, it looks, it doesn't look like a class action right now. Can I ask you just a pragmatic question? If it goes back to the Tennessee courts and they say, no, it actually is a class action, couldn't you then remove or are you out of time at that point somehow? I think we could remove at that point because the one-year limitation doesn't apply, and that can be viewed as a triggering event that would give us a new 30 days. But the fact that you removed it once wouldn't preclude you? That's what I meant. I think that's right, yes. But I think it's also important to stress that the normal presumption against removal is flipped in the CAFA context, right? There's supposed to be a presumption on the defendant's side in favor of removal. And so, again, I would point the court to this court's decision in Metz, which said you don't look at whether it can be certified. If it can't be certified, that's a merits decision for after removal. Right. No, I understand that. I was just referencing the concurrence in Nestle. Okay. I see the red lights on. I don't know if you wanted to ask about standing since you direct the parties to be ready for it, or we can save that for rebuttal. Yeah. Why don't we save it for rebuttal unless anyone wants to ask now? Okay. Thank you. May it please the court. I'm Johnny Norris here representing these four plaintiffs in these cases that have been consolidated for oral argument. A little bit of history behind this case that didn't come out in the briefing is that this is not the first set of cases that my law firm has filed like this. We filed a similar series of cases in Alabama in 2023. Alabama's lost recovery statute based on the statute of Ann is identical essentially to the Tennessee statute. We filed those cases in state court, and the defendants there, these same defendants, removed the cases, and we filed a motion to remand. They based their initial removal on traditional diversity jurisdiction based on their incorrect argument that you could aggregate the damages of all the people that were being represented. In their brief in opposition to our motion to remand, VGW group, one of the defendants here, stated that the VGW group does not dispute that this action is not a class action that might be appropriate for removal under the Class Action Fairness Act. Platika said Platika does not dispute that this action is not a class action that might warrant removal under the Class Action Fairness Act. This court is faced with an argument under the Class Action Fairness Act that has no legal merit whatsoever, and I think the panel understands that based on the questions, and unless the panel has additional questions about the Class Action Fairness Act, I'll move on. Well, I mean, what they're saying, as I understand it, is, look, you look at how it functions, and this functions, in essence, like a class action, and because it functions like a class action, you should treat it as such, and it would be, under Tennessee law, a class action. That is what they say, and they base that argument on this Braden case. The Braden case, as we pointed out in our supplemental brief that we were, thank you for allowing me to file that, was based on a ruling by the judge who did not have any other information before him. He did not have any information about... But he did, I mean... There was no oppositional briefing in that case. Right, but they did say, you saw they filed something in response to you, and they say there was argument in that case. Is that accurate or not? There was argument. I don't know if there's a transcript of that argument. I don't know what was in that argument, but clearly the judge in that case, with all respect, was incorrect, because if you look at the rules of civil procedure, it's not like you can either have an individual case or you can have a class action, because that's not the way the rules work. There's also Rule 18, which Tennessee has analog to that, which is the permissive joinder of claims. The question, though, of what should be done in terms of the procedure and how this case should be handled procedurally under Tennessee law and under Tennessee procedures, because Tennessee now has modern rules of civil procedure, which I admit they did not have in 1858 when 29-19-105 was passed. But those are questions for the state court to work out, and how the state court's going to work those questions out is a question of merits. Do you concede that if the state court says it's a class action, they could then remove it? If the state court said at some point that this is a class action, no matter what your claims are and no matter whatever else, I think then you would have to look at exactly how the court ruled. Did it rule that we are literally going to treat this as a class action? Yes, I think it would trigger another removal opportunity by them. I think that's right. What were you going to move on to? I was going to move on to the traditional diversity jurisdiction based on the aggregation of claims, unless you had additional questions about CAFA. Can I ask you about standing before you do that? I must have been reading your mind in advance because we actually briefed standing as part of our statement of the case. I think it's clear, and you mentioned the Sprint case, I think it's clear under the Sprint case, under the Stevens case, the 2000 case, that these kind of claims brought under these Keith-Ham statutes are cases and controversies that, under the tradition of the law, are amenable to being resolved by the judiciary. That's what happened here. You go all the way back. I agree standing is more difficult than it appears at first blush, but it seems to me under Sprint, there was a contractual obligation that went from the assignee, I guess, if I've got this right, back to the original plaintiffs. Here that doesn't exist, right? You agree that your client, no one could come and hold your client responsible if you, in essence, don't effectively litigate this case. I think that's right, and I think that goes to the race judicata question that Judge Gilman raised. Right, but what about on standing? Because that makes Sprint distinguishable and thus not standing, and as I understand Sprint, if you read both the majority and dissent together to understand what was going on there, it's a limited exception to the general standing rules. Well, Judge Sparrow, let me put it this way. I think that, as one of my associates put it to me the other day, what you think of as the particularized injury requirement is really just a proxy for determining, is this the kind of case that courts have traditionally resolved? And yes, it is. This is the kind of case, whether you call it an assignment or whether you call it a key-tam action. Even you agree the plaintiff, in theory, under 105, has no personal stake here. The plaintiff does not have a personal stake, and the plaintiff under Sprint and under Stevens and under Marvin v. Trout, the 1905 case that looked at the very similar Ohio statute, they don't have to have a personal stake. In fact, in Sprint, in the majority opinion, and I can't remember off the top of my head. But the assignee there did have a personal stake, and like key-tams and all those, they have a personal stake. But the court said it doesn't matter if you have a personal stake. If you read the opinion, and I wish to have it in front of me, I do not. But this is in the Sprint case. They say, what would happen to the money if the assignee kept it or if the assignee had to give it all back to the people that assigned it to him or if they used it to pay down their debt? What does it matter? It's right there in the decision, and I can pull it up. Well, are you claiming this is, in effect, a key-tam action? Yes, Your Honor. If so, I mean, key-tam is where you're suing, in effect, on behalf of the government, right, to recover some money that the government is entitled to. Well, how does that apply here? You're not seeking, if you recover, you're going to recover for spouse and children or next of kin, not for the government. Judge Gilman, I don't think that key-tam actions are limited to those. I think that, you know, these days in modern times, we think of the False Claims Act, which, as you say, you know, Tennessee has a False Claims Act and other states have a False Claims Act. But I don't think key-tam is limited to suits on behalf of the government. In fact, if you look at the 1905 case in Marvin v. Trout, which we cited in our brief, the Supreme Court of the United States characterized this as the kind of key-tam case. It's not that the claims of the government have been given to a relator. It's the claims of the families of these gamblers that have been given to this relator. It's a different entity. It's not the government's claim, but that makes it no less a key-tam case, which means that the Supreme Court, these are the kinds of cases that traditionally have been resolved in court, and so Article III standing exists. So what's your best case that you can cite that says the government doesn't have to have any involvement and still can be a key-tam case? I would say Marvin v. Trout, which we cited in our brief, which relates to the Lost Recovery Act of the state of Ohio, which is similar, although in Ohio, the relator gets to keep all the money instead of giving it to... I thought it was 50-50. Is it all? It may be 50-50. That's right, it's because of the moiety, which is half as 50-50. Some states like Kentucky... But why doesn't that make this different? In other words, that goes back to my personal stake here. The plaintiff, in theory, should get nothing under not 1905, 105, 29105, right? In this case, the plaintiff in this case is getting nothing for the use of the plaintiff. They are getting this money for the use of the families of the gamblers who lost money playing their illegal gambling games, yes. So what does the plaintiff get the gain out of this whole lawsuit? In terms of money, the plaintiff doesn't get anything. In terms of money, I mean, it's a situation where... Is it just a do-gooder Robin Hood? No, I think it's a situation where the state of Tennessee decided that they were so against gambling that they were going to literally allow... And one phrase you don't hear from the defendants in this case, hardly at all, is the language of the statute, which says any person can bring this claim. It doesn't have to be a related person. It doesn't have to be a mother or a father or a cousin or a best friend or anything like that. Any person can bring this claim. And the purpose for that from the state's point of view is, well, that's put somebody who's hosting gambling games in a lot of danger because anybody could soon need to get their money back. Go ahead. But doesn't that get you right back to a standing problem? I don't think so, Your Honor. Because if you know the general idea of standing, I thought, was that if you don't have a stake in the game, then you can't just haul off and bring suit to benefit somebody else. I think that it's more that... I think that the standing question really is... And you see this a lot in all the cases involving environmental regulations and things like that. I think the question is whether... Did somebody... The standing question really is, did somebody get damaged? And is that a concrete and particularized damage? Yes, it is. But it's not the concrete and particularized damage of my clients. But if you look at the Supreme Court precedent on that, you have to have some kind of personal stake. You have to have been harmed. If you look at... I can't remember which one, Sierra Club or...  The company in Sprint had no dog in that fight. No, but if you look at... I think it's page like 288 of that opinion, where they're responding to the dissent. They say, no, they have a contractual obligation, and they can be held accountable, and they do get a cut of what they recover. But they weren't harmed in the first instance. They were just aggregators. They just took all these... Sure, but they had a contractual... That was my point, is the thing they said that was distinct there is they had a contractual obligation back to the plaintiff, the plaintiffs themselves in that case, because they couldn't write individually it wasn't worth bringing a lawsuit. So they aggregated the claims and assigned it, but they had a contract there. Whereas here, there's no contract between the families and the plaintiff. And that's what I'm saying. That was the uniqueness of that case. If you go back to the Stevens case, which is where you started really talking about how, let's not look at the injury so much. Let's look at the history. And these kinds of statutes, so I agree with you that it is a factual distinction between this case and Sprint, that my client doesn't have a dog in the hunt. But under the rationale of the Stevens case, Justice Scalia wrote in 2000, that's not what the test is. In other words, you don't go back to the issue of did this particular plaintiff suffer a damage. You don't go back to that issue because the question is, is this the kind of case that was traditionally resolved in court at common law and in history? And going back to the 13th century, you know, these sorts of key TAM cases have been part of the history of what Article III means by case and controversy. Case and controversy means, is this the kind of dispute that is resolvable by the court? Even in the key TAM case, I'm sorry to interrupt you, but Justice Scalia talks about, right, in Stevens, talks about that the relator has a personal stake. He mentions that. That is true, but that is not the rationale of that decision. The rationale of the decision is based on history. It's based on the fact that these are the kinds of cases that, and in the context of this case, it's the kind of case that's been traditional in English and American law since the original statute of Ann was passed in England in 1710. And so, these are the kinds of cases— Nothing that sounds a little disturbing about, I mean, are the plaintiffs here like Don Quixote just wandering the world looking to do good, to make people happy and recover gambling losses, so that anybody can bring the suit on behalf of them without themselves having a dog in the hunt, as you say? Your Honor, I wouldn't— Isn't that a little strange? I wouldn't speculate as to my client's motivations and whether they're Don Quixote rescuers, but I will say that that's what the statute says. The statute says any other person. It doesn't say some limited person. I understand what the statute says, but the fact that the statute says that doesn't mean that they therefore have standing. It just means you have maybe statutory, but you don't have constitutional. Look, you may have standing in Tennessee, but the question here is federal court. Your Honor, I would say this, too, and I firmly believe that Article III standing exists in this case because of the tradition, because of the language and rationale used in it. Yesterday, maybe it was, the defendant sent a case from the United States Supreme Court on the question of whether the plaintiff in a case has to have Article III standing in order to litigate over whether the case ought to be heard in federal court or state court on the removal issue. I agree with that. Well, you can definitely litigate the remand order. You have standing to contest the removal. The question is, there's two questions. There's standing to contest the removal. It'd be absurd if you didn't have standing to do that, but there's a different question, which is whether you have standing to proceed. In other words, whether you have a personal stake. The case they sent on Friday had to do with whether you had the ability to contest the removal. Of course, you have that. No one's fighting that. Appellate court in that case did not reach the issue of Article III standing on that basis because they decided that they were going to remand the case. That's what the defendants want. They say in that very thing, look, you can review this. You can determine this walks, quacks, like a Rule 23 action. Remand it and let the district court, after you've determined this is CAFA, determine standing because it makes sense because then it's binding throughout. Then your litigation is done. Their strategy from a tactical perspective makes perfect sense. It does, but I think that what this court should do instead is to look at, does this court have jurisdiction under CAFA or under traditional diversity jurisdiction under 28 U.S.A. 1332A? The answer is no. The panel doesn't need to reach the issue of whether following that, we would have constitutional standing to litigate in the federal courts. But of course we can decide that at any point, right? Because just, I agree with you, CAFA is subject matter jurisdiction, but standing also we can decide. I understand that and I'm not suggesting the panel does not have the power to decide it. I am suggesting that given the myriad of state laws and state procedural issues that are in this case and given that Tennessee, because of a recent Tennessee Supreme Court case, does have different standing rules, what I would urge the panel to do is to conclude that the district court was correct in remanding the case because of lack of subject matter jurisdiction under diversity without reaching the standing issue and let's let the Tennessee court sort out whether they've got standing under that case that's called. You know, there's a question of whether we even have jurisdiction to decide the diversity issue, isn't there? I think that under the case that the district court does have jurisdiction to decide whether the district court had subject matter jurisdiction. Well, the Fifth Circuit says that, look, once you just, if we decide there's no CAFA jurisdiction, then we can't go any further because the general law is that when a district court remands a case to state court, there's no interlocutory appeal. That's right, and so I think under the Fifth Circuit's decision, and there's no binding authority from this court on that question, one way or the other. But what about BP? I mean, the Supreme Court, Justice Gorsuch just said, I think 2021, that, I mean, in a very similar context, we can review the order. You can, although, again, I would suggest that the federal officer removal exception to the non-reviewability of remand orders is a positive assertion that this is not barred by this. CAFA, on the other hand, gives the court the discretion, which you exercise, to hear the appeal. Once we've exercised it, then we review the order, and the order under BP, the Supreme Court seems to be saying pretty strongly, I think that was 8 or 7-1 because Alito recused, but the order is the entire order. Yes, Your Honor, but I would suggest to you that you might have the power under the two circuit court decisions that have held that way. You might have the power to do that, but I suggest to you that you're not required to. Oh, that's a different question. Right, right. This court's not required to review the non-CAFA-related. Sure, but traditionally, we don't even have the power to review an order remand. In the Fifth Circuit, that's correct, because they were bound by a prior panel, and I see that my time is up. This panel doesn't have any additional questions. Did you have a question? No. Okay, thank you, counsel. Thank you. We've heard your argument. Thank you, Your Honor. Just a few points in rebuttal. He started with these Alabama litigation. I think it's important to recognize that in refusing to aggregate there for diversity purposes, what did the court there say? It said, this action is better viewed as a class action. This is an either-or situation. Either this is a class action, which it should be subject removal under CAFA, or it should be considered as a diversity action where you're going to aggregate. Now, the Alabama court said, no, it's more appropriately viewed as a class action, or it's not appropriately viewed as having... I can't remember. Did that district court remand then? I believe it did, yes, Your Honor. Yeah, it was the Northern District. Can I ask about standing real quick, just back to his point? The plaintiff's argument is, look, we have standing because we're either similar to the assigner in Sprint, or like in Stevens, in other words, we have a statutory assignment of standing. Why isn't that right? Like you said, Sprint is a contractual case. It's not a contractual assignment. The Stevens-Vermont Agency Scalia opinion, I think, specifically says you need to... They said these key TAM cases are a partial assignment where you, the key TAM relator, the plaintiff, are basically now owned part of the loss, and that is now your personal injury, right? Right, but that was like, as the plaintiff's attorney said, that was somewhat of an aside because he went back, if you remember Stevens, all the way to England and said these actions existed. The same thing applies here, the Queen Anne statute. Yeah, this statute here very clearly is not assigning any part of this claim to a third party. The Scalia opinion and later opinions discussing key TAM are very clear that it's not just talking about history. It said they not only have a state, but they need to have part of the loss. That article three standing requires part of the loss of the injured party. So I think at one point, Justice Scalia says... You, don't you allege, and this is my last question, don't you allege for diversity purposes it is an assignment statute? We said either, no, we say it's appropriately viewed as a collective action under CAFA, but an alternative, if you're going to accept their argument, then it's an assignment statute, then it's an assignment and it should be aggregated for those purposes. So just a couple of... Oh, your time's up. Let me see if you all have any more. Thank you, counsel. Thank you. I guess I'd like to start with what our bottom line is, which is that either the plaintiff is asserting the damages claims of thousands of strangers, or she's asserting her own claim for millions of dollars. Either way, there's federal jurisdiction. There are some hard questions, figuring out which it is, because there's the question that you're asking, Judge Lepar, is this an assignment by law of the claims of the family members for collection purposes to a stranger? I think that's a question that will need to be briefed and decided if the case is remanded to the district court, but if it is... Can I ask, I'm sorry, but if it has to be briefed and decided, then how can you win on diversity jurisdiction? Now I go all the way back to Judge Aggregation, which is, if it's not an assignment, how can you win on diversity? Let's assume you lose on CAFA. Don't we have to decide whether this is effectively an assignment? So I don't think you have to decide, because in the end, again, even the district court thought that she will lay claim to the undistributed proceeds, and I think practicality and common sense tell us that that will be far more than $75,000. What's the authority, because the law... 105 doesn't provide that she'll lay claim to that, right? 105 doesn't provide much of anything, right? But there's got to be some way for her to distribute the funds. She hasn't said... Is there any history about this law? No, we're not aware of any case where there's a stranger who asserts the right to collect these claims on behalf of the family members, and that really undergirds our argument for why this should be treated as a class action if it's allowed to go forward. But either way, there has to be federal jurisdiction. She's suing in her own name. She is not suing on behalf of other people, you know, in the names of other people. Well, she is doing it on behalf of other people. But she's not suing in their name. I mean, she's seeking to assert the private damages claims that belong to other people. If they've been assigned to her, she's seeking $5 million for her. If they haven't been assigned to her, there needs to be some due process protections put in place to protect those rights of absent people, and those are... It has to be something similar to a class action mechanism. Happy to answer more questions. Anything further? Okay, thank you, counsel. Thank you all very much for the very thoughtful arguments in this interesting case, and pursuant to the law, we will get something out forthwith in this fascinating and difficult case. We really appreciate you coming to Memphis to argue it, and we will be in recess.